SUMMONS TO THE SHERIFF OF WILSON COUNTY

STATE OF TENNESSEE

CHANCERY COURT OF WILSON COUNTY

**Service Copy**

Christopher Sorey
_____
Plaintiff

vs

Wilson County Book Review Committee
_____
Defendant

Wilson County Board of Education
_____
Defendant

_____
Defendant

CIVIL ACTION

NO. 2023-CV-37

SUMMONS

To the above named Defendant(s): Wilson County Book Review Committee
P: (615)444-0585       c/o Michael R. Jennings, Esq.
F: (615)449-8239       326 North Cumberland St.
mjennings law@ aol.com  Lebanon, TN 37087

You are hereby summoned and required to serve upon ___Daniel Horwitz___,
plaintiff's attorney, whose address is ___4016 Westlawn Drive Nashville, TN 37209___,
and answer to the complaint which is herewith served upon you within thirty (30) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint.

Witness, Millie Sloan, Clerk and Master of said court, issued at office the

___14th___ of ___February___ A.D. 20 ___23___

TESTE: First Monday in ___2/14___, 20 ___23___  ___Millie Sloan___
Millie Sloan, Clerk and Master

By ___Cindy Y. Wry___
Deputy Clerk and Master

Received this ___21___ day of ___Feb___, 20 ___23___

___Lt. Jeff #370___
Deputy Sheriff
___Steve Gatlin___

(This summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedure.)

If you have a disability and require assistance, please call:
615-444-2835

WC-38-CG-08/20

IN THE CHANCERY COURT FOR WILSON COUNTY, TENNESSEE

| | | |
|---|---|---|
| CHRISTOPHER SOREY, | § § § § | |
| Plaintiff, | § § | FILED A.M. FEB 16 2023 1:45 P.M. |
| v. | § § | Case No. 2023-CV-37 MILLIE SLOAN, CLERK & MASTER CHANCERY COURT WILSON CO., TN |
| WILSON COUNTY BOOK REVIEW COMMITTEE, a/k/a WILSON COUNTY DISTRICT BOOK APPEAL COMMITTEE, and WILSON COUNTY BOARD OF EDUCATION, a/k/a WILSON COUNTY SCHOOL BOARD, | § § § § § § § § § | |
| Defendants. | § § | |

**PLAINTIFF'S PROPOSED ORDER SETTING HEARING ON PLAINTIFF'S APPLICATION FOR TEMPORARY INJUNCTION**

It appearing to the Court that the Plaintiff has filed an application for a temporary injunction pursuant to Tenn. R. Civ. P. 65.04(2), it is accordingly ORDERED that a hearing be held upon Plaintiff's application at 9:00 o'clock (a.m.)/p.m. on the 3rd day of March, 2023. IN HARTSVILLE, TROUSDALE COUNTY, TN.

~~Unless an objection is timely raised by the Defendants before hearing, trial of the action on the merits shall be advanced and consolidated with the hearing of the application pursuant to Tenn. R. Civ. P. 65.04(7).~~ CKS

It is SO ORDERED.

Entered this the 16th day of February, 2023.

_____
CK Smith
CHANCELLOR

-1-

Respectfully submitted,

By: /s/ Daniel A. Horwitz
DANIEL A. HORWITZ, BPR #032176
LINDSAY SMITH, BPR #035937
MELISSA K. DIX, BPR #038535
HORWITZ LAW, PLLC
4016 WESTLAWN DR.
NASHVILLE, TN 37209
daniel@horwitz.law
lindsay@horwitz.law
melissa@horwitz.law
(615) 739-2888

*Counsel for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of February, 2023, a copy of the foregoing was mailed via USPS mail, postage prepaid and/or transmitted via the Court's e-filing system, to:

Michael R. Jennings
Attorney at Law
326 North Cumberland Street
Lebanon, TN 37087
Phone: (615) 444-0585
Fax: (615) 449-8239
mjenningslaw@aol.com

By: /s/ Daniel A. Horwitz
Daniel A. Horwitz, BPR #032176

-2-

# IN THE CHANCERY COURT FOR WILSON COUNTY, TENNESSEE

CHRISTOPHER SOREY, §
§
*Plaintiff,* §
§
v. § Case No. 2023-CV-37
§
WILSON COUNTY BOOK REVIEW §
COMMITTEE, a/k/a WILSON §
COUNTY DISTRICT BOOK §
APPEAL COMMITTEE, and WILSON §
COUNTY BOARD OF EDUCATION, §
a/k/a WILSON COUNTY SCHOOL §
BOARD, §
§
*Defendants.* §



## PLAINTIFF'S APPLICATION FOR TEMPORARY INJUNCTION

Comes now the Plaintiff, through undersigned counsel, and pursuant to Tenn. R. Civ. P. 65.04(2), respectfully applies to this Court to issue a temporary injunction:

(1) ordering the Book Review Committee to publish adequate public notice of its meetings in advance of them; and

(2) forbidding the Book Review Committee from meeting without publishing adequate public notice.

Pursuant to Tenn. R. Civ. P. 65.04(7), the Plaintiff additionally moves that the trial of this action on the merits be advanced and consolidated with the hearing on the Plaintiff's application for a temporary injunction and that live testimony be taken and permitted.

A Memorandum of Law in support of this Application and a Proposed Order scheduling a hearing on this Application have been filed contemporaneously.

Respectfully submitted,

By: /s/ Daniel A. Horwitz
DANIEL A. HORWITZ, BPR #032176
LINDSAY SMITH, BPR #035937
MELISSA K. DIX, BPR #038535
HORWITZ LAW, PLLC
4016 WESTLAWN DR.
NASHVILLE, TN 37209
daniel@horwitz.law
lindsay@horwitz.law
melissa@horwitz.law
(615) 739-2888

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of February, 2023, a copy of the foregoing was mailed via USPS mail, postage prepaid and/or transmitted via the Court's e-filing system, to:

Michael R. Jennings
Attorney at Law
326 North Cumberland Street
Lebanon, TN 37087
Phone: (615) 444-0585
Fax: (615) 449-8239
mjenningslaw@aol.com

By: /s/ Daniel A. Horwitz
Daniel A. Horwitz, BPR #032176

-2-

Case 3:23-cv-00181   Document 1-2   Filed 03/01/23   Page 5 of 17 PageID #: 37

IN THE CHANCERY COURT FOR WILSON COUNTY, TENNESSEE

| | |
|---|---|
| CHRISTOPHER SOREY,<br><br>  *Plaintiff,*<br><br>  *v.*<br><br>WILSON COUNTY BOOK REVIEW COMMITTEE, a/k/a WILSON COUNTY DISTRICT BOOK APPEAL COMMITTEE, and WILSON COUNTY BOARD OF EDUCATION, a/k/a WILSON COUNTY SCHOOL BOARD,<br><br>  *Defendants.* | § § § § § § § § § § § § § § § § Case No. 2023-CV-37 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS APPLICATION FOR TEMPORARY INJUNCTION**

## I. INTRODUCTION

In response to a new law that requires schools to create a policy to review books available to students, the Wilson County School Board established a "Book Review Committee" in Spring 2022.[1] The Book Review Committee's central task is to make recommendations to the School Board regarding whether books should be removed from Wilson County high school and middle school libraries or placed on the district's "mature reading list." Based on the Book Review Committee's recommendations—which the School Board has later "upheld" on several occasions—multiple books have either been

---

[1] Kendall Ashman, *Tennessee State Representative alleges Wilson County School Board is in Violation of Criminal Law Over Book*, WKRN.COM (Jan. 26, 2023), https://www.wkrn.com/news/local-news/tennessee-state-representative-alleges-wilson-county-school-board-is-in-violation-of-criminal-law-over-book/; Angie Mayes, *Wilson County Schools Removes two books from its libraries*, THE WILSON POST (Dec. 6, 2022), https://www.wilsonpost.com/news/wilson-county-schools-removes-two-books-from-its-libraries/article_12886d82-757f-11ed-8e9d-df0ba04076f6.html.

-1-

removed from school libraries or had student access to them restricted.

What the Book Review Committee has *not* done, though, is provide adequate (or any) notice to the public in advance of its meetings. *See* Compl. at Ex. 1 ("There are no records relating to the public notice of the book review committee meetings which provided a recommendation and which was later voted on by the Board."); Compl. at Ex. 2, at 1 ("As I indicated earlier, there are no records relating to the public notice of the meetings for book review committee."). Thus, although the Book Review Committee has met at least four times since its inception and kept minutes of those meetings, *see generally* Compl. at Ex. 2, it has never provided the public notice of its meetings at any point during its nearly year-long existence.

The Book Review Committee's secret meetings clearly and unmistakably violate Tennessee's Open Meetings Act. The Book Review Committee also does not appear to be at risk of complying with Tennessee's Open Meetings Act anytime soon, though each new secret meeting constitutes an independent violation of state law and violates the Plaintiff's state statutory and federal constitutional rights. Thus, temporary injunctive relief is necessary, and for the reasons detailed below, this Court should issue a temporary injunction:

(1) ordering the Book Review Committee to publish adequate public notice of its meetings in advance of them; and

(2) forbidding the Book Review Committee from meeting without publishing adequate public notice.

## II. FACTS

On December 5, 2022, the Wilson County School Board met to discuss several topics, including recommendations from the Book Review Committee. *See* Kendall

Ashman, *Tennessee State Representative alleges Wilson County School Board is in Violation of Criminal Law Over Book*, WKRN.COM (Jan. 26, 2023), https://www.wkrn.com/news/local-news/tennessee-state-representative-alleges-wilson-county-school-board-is-in-violation-of-criminal-law-over-book/. *See also* Compl. at Ex. 5 at 2 (noting that the book review committee's findings were presented as part of the regular agenda as agenda items 11.1 and 11.2). At this meeting, the Book Review Committee presented its findings as to two books, and it recommended to the Board that those books be added to the "mature reading list[,]" which requires parental consent for a child to check out a book. Compl. at Ex. 2 at 15-17. The School Board ultimately voted to remove both books from Wilson County Schools' libraries entirely. *Id.* The Book Review Committee has made similar recommendations, and the Board has taken similar actions upholding its recommendations on several occasions. *See generally id.* (noting instances in which the School Board upheld its recommendations for banning or restricting books). *See also* Angie Mayes, *WCS enrollment crosses 20K mark*, THE WILSON POST (Aug. 2, 2022), https://www.wilsonpost.com/community/wcs-enrollment-crosses-20k-mark/article_6483d39a-1262-11ed-b602-a34c1552706e.html ("The book review committee has looked at two books for consideration to leave the books in school libraries or remove them. 'I Am Not Your Beautiful Mexican Daughter,' by Erika L. Sánchez and 'Deogratias: A Tale of Rwanda,' by Jean-Philippe Stassen were reviewed by the committee."); Kendall Ashman, *'Perks of Being a Wallflower' up for removal; Wilson County school board meeting postponed*, WKRN (Jan. 10, 2023), https://www.wkrn.com/news/local-news/perks-of-being-a-wallflower-up-for-removal-wilson-county-school-board-meeting-postponed/ ("'The *Perks of Being a Wallflower'* is up for discussion. . . . The Wilson County School Board was expected to hear a

-3-

Case 3:23-cv-00181 Document 1-2 Filed 03/01/23 Page 8 of 17 PageID #: 40

recommendation from the book review committee as well as several people expressing their concerns from both sides."); Rebecca Cardenas, *Wilson County Board keeps books in school libraries*, WSMV (Jan. 10, 2023), https://www.wsmv.com/2022/04/05/wilson-co-school-board-discusses-book-bans-monday-evening/ ("Ultimately, the board voted unanimously in favor of D-BAC's recommendations to keep the books inside high school libraries and restrict them in middle school libraries.").

Plaintiff Christopher Sorey—a Wilson county resident—thereafter sought to obtain information about the Book Review Committee's public business. *See* Compl. at Ex. 4, at 1 ("I am requesting the notice of any meeting held by a book review committee as well as where the notices were published"). Five days later, the School Board denied Mr. Sorey's request. *Id.* at 2. As grounds, the School Board reported that: "No such record(s) exist[.]" *Id.*

Mr. Sorey thereafter retained counsel. The undersigned then submitted a second public records request propounded to the County Attorney, the Director of Schools, and the Wilson County Clerk. *See* Compl. at Ex. 5. Counsel's request sought:

1. All meeting minutes of the Wilson County Book Review Committee, from its inception until the present time; and

2. All records relating to public notice of the regular and special meetings of the Wilson County Book Review Committee, including: (i) the notices themselves; (ii) the location(s) where such notices were published; and (iii) records evidencing the dissemination of such notices to the public.

*Id.* at 2–3.

On January 25, 2023, the County Attorney responded that his office and the Wilson County Clerk had no responsive records. *See* Compl. at Ex. 6. Thereafter, on

-4-

February 2, 2023, the School Board provided an initial response that: "There are records for the minutes of the meetings. <u>There are no records relating to the public notice of the book review committee meetings which provided a recommendation and which was later voted on by the Board.</u>" *See* Compl. at Ex. 1 (emphasis added).

The School Board furnished a complete response to the undersigned's public records request on February 9, 2023. *See* Compl. at Ex. 2. The response included all meeting minutes for the Book Review Committee since its inception. *See id.* No meeting notices; no notices indicating where notices were published; and no records evidencing the dissemination of such notices to the public were provided. *See id.* The School Board's records custodian also confirmed again that "there are no records relating to the public notice of the meetings for book review committee." *See id.* at 1. The response did include meeting minutes from four Book Review Committee meetings during which official business was conducted, though. *See generally id.* Based on the Book Review Committee's recommendations—recommendations that the School Board later "upheld"—at least six books are no longer in circulation in Wilson County middle schools, at least two books have been removed from Wilson County high schools, and at least one book has been placed on the district's "mature reading list," requiring parental consent to read. *Id.*

## III. LEGAL STANDARDS

The Tennessee General Assembly enacted the Open Meetings Act to afford the public a right to know of and attend meetings at which public business is conducted. The Act provides that if adequate notice is not given to the public before a public body meets, then any action taken by the government at the meeting is "void and of no effect[.]" *See* Tenn. Code Ann. § 8-44-105. The purpose of the law is to promote transparency and

Case 3:23-cv-00181   Document 1-2   Filed 03/01/23   Page 10 of 17 PageID #: 42

accountability in government. *See Johnston v. Metro. Gov't of Nashville and Davidson Cnty.*, 320 S.W.3d 299, 310 (Tenn. Ct. App. 2009). *See also* Tenn. Code Ann. § 8-44-101(a) ("The general assembly hereby declares it to be the policy of this state that the formation of public policy and decisions is public business and shall not be conducted in secret."). *See also Souder v. Health Partners, Inc.*, 997 S.W.2d 140, 145 (Tenn. Ct. App. 1998) ("Public knowledge of the manner in which government decisions are made by public officials is an essential element of a democratic government. [. . .] In order to provide openness in government, the legislature passed the Open Meetings Act."); *Metro. Air Rsch. Testing Auth., Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 842 S.W.2d 611, 616 (Tenn. Ct. App. 1992) ("Public knowledge of the manner in which governmental decisions are made is an essential part of the democratic process.").

The Open Meetings Act "is remedial in nature and thus 'should be liberally construed in furtherance of its purpose.'" *Johnston*, 320 S.W.3d at 310 (quoting *Neese v. Paris Special Sch. Dist.*, 813 S.W.2d 432, 434 (Tenn. Ct. App. 1990)). *See also State ex rel. Akin v. Town of Kingston Springs*, No. 01–A–01–9209–CH00360, 1993 WL 339305, at *2 (Tenn. Ct. App. Sept. 8, 1993) ("It should be interpreted to promote openness and accountability in government"). The Act's central requirement—set forth at Tenn. Code Ann. § 8-44-103(a)–(b)—is "that 'adequate public notice' be given of the regular and special meetings of government bodies[.]" *Gray v. Dickson Cnty.*, No. M2021-00545-COA-R3-CV, 2022 WL 1701961, at *3 (Tenn. Ct. App. May 27, 2022). This requirement "has been interpreted to mean sufficient notice 'under the circumstances, or such notice based on the totality of the circumstances as would fairly inform the public.'" *Id.* (quoting *Memphis Pub. Co. v. City of Memphis*, 513 S.W.2d 511, 513 (Tenn. 1974)). The Court of Appeals has recently explained that:

-6-

> The notice required by the Open Meetings Act is adequate when it "gives interested citizens a reasonable opportunity to exercise their right *to be present* at a governing body's meeting." *State ex rel. Akin v. Town of Kingston Springs*, No. 01-A-01-9209-CH00360, 1993 WL 339305, at *5 (Tenn. Ct. App. Sept. 8, 1993) (emphasis added); *see also Fisher v. Rutherford Cty. Reg'l Plan. Comm'n*, No. M2012-01397-COA-R3CV, 2013 WL 2382300, at *6 (Tenn. Ct. App. May 29, 2013) (noting that the Tennessee Open Meetings Act "requires notice of the meeting itself and does not speak to notice of the content of the meeting" for regularly scheduled meetings).

*Id.*

The Open Meetings Act demands strict compliance. *See Zseltvay v. Metro. Gov't of Nashville & Davidson Cnty.*, 986 S.W.2d 581, 585 (Tenn. Ct. App. 1998) ("strict compliance with the Act is a necessity if it is to be effective"). The Act must also "be construed broadly to promote openness and accountability in government, [. . .] and to protect the public against closed door meetings at every stage of a government body's deliberations." *Metro. Air Rsch. Testing Auth., Inc.*, 842 S.W.2d at 616 (internal citation omitted).

The remedy for an Open Meetings Act violation is straightforward and well defined. In particular, "[i]f a meeting is conducted in violation of the Open Meetings Act, actions taken at that meeting 'shall be void and of no effect; provided that this nullification of actions taken at such meetings shall not apply to any commitment, otherwise legal, affecting the public debt of the entity concerned.'" *Gray*, 2022 WL 1701961, at *4 (quoting Tenn. Code Ann. § 8-44-105)).

The Open Meetings Act also expressly confers chancery courts with jurisdiction to issue injunctions for violations of its provisions. *See* Tenn. Code Ann. § 8-44-106(a) ("The circuit courts, chancery courts, and other courts which have equity jurisdiction, have jurisdiction to issue injunctions, impose penalties, and otherwise enforce the purposes of

-7-

this part upon application of any citizen of this state."). With respect to temporary injunctive relief, Tenn. R. Civ. P. 65.04(2) provides that:

> A temporary injunction may be granted during the pendency of an action if it is clearly shown by verified complaint, affidavit or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss or damage pending a final judgment in the action, or that the acts or omissions of the adverse party will tend to render such final judgment ineffectual.

*Id.*

When determining whether a temporary injunction should issue, this Court considers the following four factors:

(1) The threat of irreparable harm to the plaintiff if the injunction is not granted;

(2) The balance between this harm and the injury that granting the injunction would inflict on defendant;

(3) The probability that the plaintiff will succeed on the merits; and

(4) The public interest.

*See Moody v. Hutchinson*, 247 S.W.3d 187, 199-200 (Tenn. Ct. App. 2007) (citing *Mosby v. Colson*, No. W2006-00490-COA-R3-CV, 2006 WL 2354763 (Tenn. Ct. App. Aug.14, 2006)).

## IV. ARGUMENT

All four temporary injunction factors favor the Plaintiff. Accordingly, for the reasons detailed below, this Court should issue a temporary injunction:

(1) ordering the Book Review Committee to publish adequate public notice of its meetings in advance of them; and

(2) forbidding the Book Review Committee from meeting without publishing

Case 3:23-cv-00181   Document 1-2   Filed 03/01/23   Page 13 of 17 PageID #: 45

adequate public notice.

### A. THE PLAINTIFF WILL SUFFER IRREPARABLE HARM IF THE INJUNCTION IS NOT GRANTED.

"Public knowledge of the manner in which governmental decisions are made is **an essential part of the democratic process**." *Gray*, 2022 WL 1701961, at *3 (quoting *Metro. Air Rsch. Testing Auth., Inc.*, 842 S.W.2d at 616) (emphasis added)). Citizens like Mr. Sorey also cannot intelligently exercise their right to participate in government when government meetings are conducted in secret. *Cf. State ex rel. Akin*, 1993 WL 339305, at *5 (providing that citizens have a "right to be present at a governing body's meeting."). Nor can Mr. Sorey meaningfully petition or intelligently vote for local representatives when he is deprived of his statutorily and constitutionally guaranteed rights to receive information regarding the government's actions. *Cf. Metro. Air Rsch. Testing Auth., Inc.*, 842 S.W.2d at 616 ("the public must be able to go beyond and behind the decisions reached and be appraised of the pros and cons involved if they are to make sound judgments on questions of policy and to select their representatives intelligently." (quoting Note, *Open Meeting Statutes: The Press Fights for the "Right to Know"*, 75 HARV. L. REV. 1199, 1200–01 (1962) (internal quotations omitted))).

Here, the Book Review Committee has spent the better part of a year meeting and deliberating in secret. As a result of its recommendations—which the School Board later upheld—at least six books are banned from Wilson County middle schools, at least two books are banned from Wilson County high schools, and at least one has been restricted to a "mature reading list." Mr. Sorey has been deprived of his right to participate in government as a result of the Book Review Committee's secret meetings, and he will continue to be deprived of that right absent judicial intervention. That harm cannot be

remedied by damages or other relief. Accordingly, the first temporary injunction factor weighs in Mr. Sorey's favor.

**B.    THE BALANCE OF HARMS FAVORS ISSUING A TEMPORARY INJUNCTION.**

No harm will result from ordering the Book Review Committee to publish adequate public notice of its meetings or forbidding the Book Review Committee from meeting without publishing adequate public notice. The Open Meetings Act already requires the Book Review Committee to publish adequate public notice in advance of its meetings. It similarly provides that meetings that occur without adequate public notice are "void and of no effect[.]" *See* Tenn. Code Ann. § 8-44-105. Thus, issuing a temporary injunction compelling the Book Review Committee to do what statutory law already requires would result in no cognizable harm to the Defendants, because the Defendants cannot claim any lawful interest in violating applicable law. Similarly, forbidding the Book Review Committee from meeting without publishing adequate public notice would *benefit* all parties—the Book Review Committee included—because it would prevent illicit and void meetings from taking place in the first instance without the need to invalidate them later. Thus, the second temporary injunction factor weighs in Mr. Sorey's favor, too.

**C.    THE PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.**

The Open Meetings Act requires the Book Review Committee to publish adequate public notice of its meetings. *See* Tenn. Code Ann. § 8-44-103(a)–(b). Even so, the Book Review Committee has *never* published public notice of its meetings. *See* Compl. at Ex. 1 ("There are no records relating to the public notice of the book review committee meetings which provided a recommendation and which was later voted on by the Board."); Compl. at Ex. 2, at 1 ("As I indicated earlier, there are no records relating to the public notice of the meetings for book review committee."). Accordingly, as to his public notice claims,

the Plaintiff "not only [has] a substantial likelihood of success on the merits—it is difficult to imagine [him] losing." *See Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2488 (2021). Thus, the third temporary injunction factor also weighs in Mr. Sorey's favor.

### D. THE PUBLIC INTEREST FAVORS ISSUING A TEMPORARY INJUNCTION.

The public's interest in the Book Review Committee complying with the Open Meetings Act is indisputable. Indeed, the entire purpose of the Open Meetings Act is to "promote openness and accountability in government, and to protect the public against closed-door meetings at every stage of a governing body's deliberations." *State ex rel. Akin*, 1993 WL 339305, at *2 (cleaned up). Consequently, the public interest favors issuing a temporary injunction ensuring the Book Review Committee's future compliance with the Open Meetings Act as well.

## V. CONCLUSION

For the foregoing reasons, all four temporary injunction factors support Mr. Sorey. Thus, this Court should issue a temporary injunction:

(1) ordering the Book Review Committee to publish adequate public notice of its meetings in advance of them; and

(2) forbidding the Book Review Committee from meeting without publishing adequate public notice.

Case 3:23-cv-00181   Document 1-2   Filed 03/01/23   Page 16 of 17 PageID #: 48

Respectfully submitted,

By: /s/ Daniel A. Horwitz
DANIEL A. HORWITZ, BPR #032176
LINDSAY SMITH, BPR #035937
MELISSA K. DIX, BPR #038535
HORWITZ LAW, PLLC
4016 WESTLAWN DR.
NASHVILLE, TN 37209
daniel@horwitz.law
lindsay@horwitz.law
melissa@horwitz.law
(615) 739-2888

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of February, 2023, a copy of the foregoing was mailed via USPS mail, postage prepaid and/or transmitted via the Court's e-filing system, to:

Michael R. Jennings
Attorney at Law
326 North Cumberland Street
Lebanon, TN 37087
Phone: (615) 444-0585
Fax: (615) 449-8239
mjenningslaw@aol.com

By: /s/ Daniel A. Horwitz
Daniel A. Horwitz, BPR #032176