# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| CHRISTOPHER SOREY | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 3:23-cv-00181 |
| | § | |
| WILSON COUNTY BOOK REVIEW | § | |
| COMMITTEE, a/k/a WILSON | § | |
| COUNTY DISTRICT BOOK APPEAL | § | |
| COMMITTEE, and WILSON COUNTY | § | |
| BOARD OF EDUCATION, a/k/a | § | |
| WILSON COUNTY SCHOOL BOARD | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.  INTRODUCTION

The Tennessee Open Meetings Act declares "the policy of this state" to be "that the formation of public policy and decisions in public business shall not be conducted in secret." Tenn. Code Ann. § 8-44-101(a).  This policy is premised upon the widely accepted view that "[p]ublic knowledge of the manner in which governmental decisions are made is an essential part of the democratic process." *See Metro. Air Rsch. Testing Auth., Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 842 S.W.2d 611, 616 (Tenn. Ct. App. 1992). *See also Detroit Free Press v. Ashcroft*, 303 F.3d 681, 693 (6th Cir. 2002) ("requiring the Government to account for their choices assures an informed public—a foundational principle of democracy.").

To promote Tennessee's public policy of transparency, Tennessee law provides

generally that "[a]ll meetings of any governing body are declared to be public meetings open to the public at all times[.]" *See* Tenn. Code Ann. § 8-44-102(a). Tennessee law also requires that "[a]ny such governmental body which holds a meeting previously scheduled by statute, ordinance, or resolution shall give adequate public notice of such meeting[,]" *see* Tenn. Code Ann. § 8-44-103(a), and it provides that detailed "minutes of a meeting of any such governmental body shall be promptly and fully recorded[.]" *See* Tenn. Code Ann. § 8-44-104(a). By law, other than matters affecting public debt, any action taken in violation of these requirements "shall be void and of no effect[.]" *See* Tenn. Code Ann. § 8-44-105 ("Any action taken at a meeting in violation of this part shall be void and of no effect; provided, that this nullification of actions taken at such meetings shall not apply to any commitment, otherwise legal, affecting the public debt of the entity concerned.").

Here, there is no genuine dispute that the Wilson County Book Review Committee (the "Book Review Committee") has spent roughly a year conducting meetings in secret during which it developed policy recommendations for the Wilson County Board of Education (the "School Board") without giving the public adequate (or any) notice.[1] During at least two scheduled Book Review Committee meetings, the Defendants' records also reflect that meeting minutes were not recorded.[2] When meeting minutes were recorded, the Book Review Committee's meeting minutes confirm that the Book Review Committee developed official recommendations on book-banning, book-restrictions, and

---

[1] *See, e.g.,* Doc. 11-1 at PageID #96 ("There are no records relating to the public notice of the book review committee meetings which provided a recommendation and which was later voted on by the Board."); Doc. 11-2 at PageID #98 ("As I indicated earlier, there are no records relating to the public notice of the meetings for book review committee."). *See also* Doc. 11-2 at PageID ##101–126 (reflecting extensive public business and recommendations arising from Book Review Committee meetings).

[2] *Compare* Doc. 11-2 at PageID #98 (referencing meeting at which the Book Review Committee made recommendations regarding the books "Eleanor and Park" and "The Bluest Eye"), *with* Doc. 11-2 at 5–30 (containing no minutes for any such meeting). *Also compare* Doc. 11-2 at PageID #109 (referencing meeting scheduled for "September 27th @ 4:30"), *with* Doc. 11-2 at PageID ## 101–126 (reflecting no meeting minutes for any such meeting).

other public business to present to the Wilson County School Board.[3]

As grounds for this approach, the Defendants maintain that "[t]he Wilson County Book Review Committee is not a governing body as defined by Tenn. Code Ann. § 8-44-102."[4] Thus, the Parties' dispute turns on whether "the Book Review Committee is required [to] hold public meetings and to give adequate public notice of its meetings to members of the public who wish to attend them."[5]

The Parties' disagreement regarding this matter—in essence, whether the Book Review Committee must comply with Tennessee's Open Meetings Act—presents a pure question of law. *See Roberts v. Hamer*, 655 F.3d 578, 582 (6th Cir. 2011) ("A matter requiring statutory interpretation is a question of law requiring de novo review, and the starting point for interpretation is the language of the statute itself.") (cleaned up). As detailed below, the Defendants' claim that the Book Review Committee may conduct official business and develop policy recommendations in secret is also wrong as a matter of law. As a result, this Court should:

1. Grant the Plaintiff partial summary judgment on his two Open Meetings Act claims;

2. Declare "void and of no effect" the Book Review Committee's actions in violation of Tennessee's Open Meetings Act, *see* Tenn. Code Ann. § 8-44-105; and

3. "[I]ssue injunctions, impose penalties, and otherwise enforce the purposes of" the Open Meetings Act as set forth in Tenn. Code Ann. § 8-44-106(a)–(d),

---

[3] *See* Doc. 11-2 at PageID ## 101–126.
[4] Doc. 9 at PageID #78, ¶ 9.
[5] *Compare* Doc. 11, ¶ 35 (alleging that "the Book Review Committee is required [to] hold public meetings and to give adequate public notice of its meetings to members of the public who wish to attend them."), *with* Doc. 9, ¶ 35 ("Denied.").

## II.  FACTS

In the Spring of 2022, "the Wilson County Board of Education's Director of Schools organized a group of individuals" to create the Wilson County Book Review Committee.[6] Thereafter, the Book Review Committee—acting with at least eleven members[7]—met multiple times throughout 2022 and in early 2023 to "evaluat[e] books brought before them in compliance with Tennessee law and Wilson County Board of Education policy."[8]

After becoming aware of the Book Review Committee's activities, the Plaintiff "filed a public records request seeking records of any public notices of the book review committee meetings."[9]  The Plaintiff's request was denied on the basis that "[n]o such record(s) exists[.]"[10]

Concerned that responsive records had been withheld, the Plaintiff retained counsel.  Through counsel, the Plaintiff then requested the following records:

1.      All meeting minutes of the Wilson County Book Review Committee, from its inception until the present time; and

2.      All records relating to public notice of the regular and special meetings of the Wilson County Book Review Committee, including: (i) the notices themselves; (ii) the location(s) where such notices were published; and (iii) records evidencing the dissemination of such notices to the public.[11]

Via a records custodian, the Defendants initially responded to this second request

---

[6] Doc. 9 at ¶ 9 ("It is admitted that, in compliance with the requirements of State law as well as Wilson County Board of Education policy, the Wilson County Board of Education's Director of Schools organized a group of individuals which is referred to in the Plaintiff's Complaint as the Book Review Committee.").

[7] *See* Doc. 11-2 at 4.

[8] Doc. 9 at ¶ 10 ("It is admitted that the entity referred to as the Book Review Committee in the Plaintiff's Complaint, which includes a mix of parents and school employees, evaluates books brought before them in compliance with Tennessee law and Wilson County Board of Education policy.").  *See also* Doc. 11-2 at PageID ## 101–126.

[9] Doc. 11 at ¶ 14.  *See also* Doc. 11-4 at PageID #130 (the request); Doc. 11-7 at PageID #139, ¶ 3 ("I hereby make oath and affirm that the contents of the Complaint are true and correct and that all of the Complaint's exhibits are authentic.").

[10] Doc. 11-4 at PageID #131.

[11] Doc. 11-5 at PageID ## 134–35.

by stating that:

> There are records for the minutes of the meetings. **There are no records relating to the public notice of the book review committee meetings which provided a recommendation and which was later voted on by the Board.**[12]

The Defendants then furnished a complete response confirming again that "there are no records relating to the public notice of the meetings for book review committee."[13] The Defendants' response reflected that at least some of the Book Review Committee's meetings did not have recorded minutes, too.[14]

The Defendants admit that they responded to the above public records requests "in compliance with all applicable laws[,]"[15] meaning that their responses were complete. The Defendants also admit that "the content of [each] response speaks for itself."[16]

During at least four of the Book Review Committee's meetings, meeting minutes provided by the Defendants reflect that the Book Review Committee reviewed eleven different books and made recommendations to the School Board about whether those books should remain in Wilson County Schools High School and Middle School libraries.[17] As to at least six of those books—(1) "The Bluest Eye" by Toni Morrison; (2) "Eleanor and Park" by Rainbow Rowell; (3) "My Friend Dahmer" by Derf Backderf; (4) "Monday's Not Coming" by Tiffany Jackson; (5) "A Court of Mist and Fury" by Sarah J.

---

[12] Doc. 11-1 at PageID #96 (emphasis added).

[13] Doc. 11-2 at PageID #98.

[14] *See* Doc. 11 at ¶ 20; Doc. 9 at ¶ 20. *Also compare* Doc. 11-2 at PageID #101 (referencing meeting at which the Book Review Committee made recommendations regarding the books "Eleanor and Park" and "The Bluest Eye"), *with* Doc. 11-2 at PageID ## 101–126 (containing no minutes for any such meeting).

[15] *See* Doc. 9 at ¶ 18 ("It is admitted that the Wilson County Board of Education duly responded to the Plaintiff's public records request in compliance with all applicable laws."); ¶ 19 (same); ¶ 20 (same).

[16] *See* Doc. 9 at ¶¶ 18–20.

[17] Doc. 11 at ¶ 21; Doc. 9 at ¶ 21 ("It is admitted that, in compliance with state law and Wilson County Board of Education policy, the entity referred to by Plaintiff as the Book Review Committee reviewed a number of books and brought its findings to the Wilson County Board of Education"). *See also* Doc. 11-2 at PageID ##101–126.

Maas; and (6) "Crank" by Ellen Hopkins—the Defendants also admit that the School Board "accept[ed] the recommendation of" the Book Review Committee to ban or restrict student access to them.[18]

Given the foregoing, there is no genuine dispute that the Book Review Committee conducted all of its meetings without publishing adequate (or any) public notice. There also is no genuine dispute that, during those meetings, the Book Review Committee conducted public business and developed official policy recommendations for the School Board to act upon. Nor is there any genuine dispute that minutes for at least some of the Book Review Committee's meetings were not recorded. Thus, partial summary judgment should issue in the Plaintiff's favor on his Open Meetings Act claims.

### III. LEGAL STANDARD

The Plaintiff's motion for summary judgment is subject to familiar standards. In particular:

> Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]' " *Id.*
>
> A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).
>
> The party bringing the summary judgment motion has the initial burden of

---

[18] Doc. 9 at ¶¶ 23–29.

identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 628.

*Debicki v. Publix Super Markets, Inc.*, No. 3:17-CV-1355, 2019 WL 199896, at *1 (M.D. Tenn. Jan. 15, 2019) (Richardson, J.).

Here, there being no genuine dispute as to any material facts, the Plaintiff seeks summary judgment as to Count I (alleging failure to give adequate public notice) and Count II (alleging failure to record meeting minutes) of his Complaint.[19]

## IV. ARGUMENT

Tenn. Code Ann. § 8-44-102(a) provides that "[a]ll meetings of any governing body are declared to be public meetings open to the public at all times, except as provided by the Constitution of Tennessee." *Id.* Tenn. Code Ann. § 8-44-103 accordingly instructs that—regardless of whether its meetings are "previously schedule by statute, ordinance, or resolution"—a governing body has an affirmative obligation to "give adequate public notice of such meeting." *Id.* Further, under Tenn. Code Ann. § 8-44-104(a), "[t]he minutes of a meeting of any such governmental body shall be promptly and fully recorded, shall be open to public inspection, and shall include, but not be limited to, a record of persons present, all motions, proposals and resolutions offered, the results of any votes taken, and a record of individual votes in the event of roll call." *Id.*

If a governing body violates either the public notice or the recorded meeting minutes provisions of the Open Meetings Act, any action taken by the body "shall be void and of no effect[.]" *See* Tenn. Code Ann. § 8-44-105(a). Violations of the Open Meetings

---

[19] *See* Doc. 11 at PageID ## 89–91.

Act are also redressable by a mandatory, permanent injunction for each separate violation, *see* Tenn. Code Ann. § 8-44-106(c), as well as a mandatory reporting requirement. *See* Tenn. Code Ann. § 8-44-106(d) ("the court shall order the defendants to report in writing semiannually to the court of their compliance with this part."). Under Tenn. Code Ann. § 8-44-106(a), courts with equity jurisdiction may additionally "impose penalties, and otherwise enforce the purposes of this part upon application of any citizen of this state." *See id.*

Here, as detailed below, there is no genuine dispute that the Book Review Committee violated both the public notice and recorded meeting minutes provisions of the Open Meetings Act. Partial summary judgment should issue as to Counts I and II of the Plaintiffs' Complaint as a result.

**A. THE WILSON COUNTY BOOK REVIEW COMMITTEE FAILED TO PROVIDE ADEQUATE PUBLIC NOTICE OF ITS MEETINGS IN COMPLIANCE WITH TENN. CODE ANN. § 8-44-102(A) AND § 8-44-103.**

    1.     <u>The Wilson County Book Review Committee is a governing body within the definition of Tenn. Code Ann. § 8-44-102.</u>

The Wilson County Book Review Committee is a "governing body" within the meaning of the Tennessee Open Meetings Act. *See* Tenn. Code Ann. § 8-44-102(b)(1). In particular, the Book Review Committee is a "public body which consists of two (2) or more members, with the authority to make decisions for **or recommendations to** a public body on policy or administration[.]" *Id.* at § 8-44-102(b)(1)(A) (emphasis added). Interpreting this provision, the Tennessee Supreme Court has explained that:

> It is clear that for the purpose of this Act, the Legislature intended to include **any** board, commission, **committee**, agency, authority or any other body, **by whatever name**, whose origin and authority may be traced to State, City or County legislative action and whose members have authority to make decisions **or recommendations** on policy or administration affecting the conduct of the business of the people in the governmental

sector.

*Dorrier v. Dark*, 537 S.W.2d 888, 892 (Tenn. 1976) (emphases added).

Here, the facts that the Book Review Committee "consists of two (2) or more members"[20] and has the authority to (and did) make "recommendations to a public body on policy or administration"[21] are not in dispute. *See* Tenn. Code Ann. § 8-44-102(b)(1). The Defendants also admit that the Book Review Committee was formed "in compliance with the requirements of State law as well as Wilson County Board of Education policy" by "the Wilson County Board of Education's Director of Schools[,]"[22] thus allowing this Court to trace the Committee's "origin and authority . . . to State, City or County legislative action[.]" *See Dorrier*, 537 S.W.2d at 892.

While the Board of Education is not bound to accept the recommendations of the Book Review Committee—and in two instances, it appears not to have done so[23]—the Open Meetings Act expressly includes bodies that make "recommendations" within its definition of "Governing body[.]" *See* Tenn. Code Ann. § 8-44-102(b)(1)(A). It also does so for an important reason. In particular, without comprehensively applying to "any board, commission, committee, agency, authority or any other body, by whatever name," *see Dorrier*, 537 S.W.2d at 892, government entities could have committees deliberate in secret and then ratify their secretly-developed recommendations afterward, thereby circumventing "the policy of [Tennessee] that the formation of public policy and decisions is public business and shall not be conducted in secret." *See* Tenn. Code Ann. § 8-44-101.

---

[20] *See* Doc. 11-2 at PageID #100.
[21] *See* Doc. 9 at ¶¶ 23–31 (admitting that the Committee made recommendations about eleven different books on various occasions to the Board of Education). *See also* Doc. 9 at ¶ 5 (admitting that the Book Review Committee "was organized by the Wilson County Board of Education's Director of Schools to comply with State law and Wilson County Board of Education policy regarding the review of certain books.").
[22] Doc. 9 at ¶ 9.
[23] Doc. 9 at ¶¶ 30–31.

As a result, committees—including Board of Education committees—are subject to Tennessee's Open Meetings Act, and "adequate notice of [their] meetings must be provided." *See, e.g.,* **Ex. 1** (Advisory Opinion from the Office of Open Records Counsel concluding that "an ethics screening committee . . . formed by the Wilson County Board of Education must comply with the Tennessee Open Meetings Act ('TOMA').").

In summary: because the eleven-to-twelve-member[24] Book Review Committee's origins are traced directly to both state and local legislation regarding the administration of Wilson County public schools—and because the Book Review Committee has the authority to and did make recommendations to the Board of Education "to comply with State law and Wilson County Board of Education policy regarding review of certain books"[25]—the Book Review Committee is a "[g]overning body" within the meaning of Tenn. Code Ann. § 8-44-102(b)(1)(A). The Book Review Committee was obligated to comply with the "adequate public notice" requirements of Tenn. Code Ann. § 8-44-103(a) as a result.

> 2. <u>The Wilson County Book Review Committee failed to provide adequate notice of any of its meetings.</u>

"'[A]dequate public notice means adequate public notice under the circumstances, or such notice based on the totality of the circumstances as would fairly inform the public.'" *Neese v. Paris Special Sch. Dist.*, 813 S.w.2d 432, 435 (Tenn. Ct. App. 1990) (quoting *Memphis Pub. Co. v. City of Memphis*, 513 S.W.2d 511, 513 (Tenn. 1974)). Different tests assess the adequacy of public notice depending on whether a meeting is a "special" meeting or a "regular" meeting. *See Madron v. City of Morristown*, No. E2021-

---

[24] *See* Doc. 11-2 at PageID #100.
[25] Doc. 9 at ¶ 5; *see also* Doc. 9 at ¶¶ 23–31.

- 10 -

Case 3:23-cv-00181   Document 13   Filed 03/13/23   Page 10 of 15 PageID #: 152

01514-COA-R3-CV, 2023 WL 164173, at *5–12 (Tenn. Ct. App. Jan. 12, 2023).  *See also*

Tenn. Code Ann. § 8-44-103(a)–(b).  Here, though, those differences are immaterial,

because the Defendants unqualifiedly admit that "[t]here are no records relating to the

public notice of the book review committee meetings which provided a recommendation

and which was later voted on by the Board" at all.[26]  Thus, never having published any

notice of any of its meetings, summary judgment should issue as to Count I of the

Plaintiff's Complaint (the Plaintiff's adequate public notice claim).

**B.    THE WILSON COUNTY BOOK REVIEW COMMITTEE FAILED TO "PROMPTLY AND FULLY RECORD[]" ITS MEETING MINUTES FOR ALL MEETINGS.**

As a governing body required to comply with Tennessee's Open Meetings Act, *see*

*supra* at 8–10, the Book Review Committee also had an affirmative obligation to

"promptly and fully record[]" its meeting minutes, which "shall be open to public

inspection, and shall include, but not be limited to, a record of persons present, all

motions, proposals and resolutions offered, the results of any votes taken, and a record of

individual votes in the event of a roll call."  *See* Tenn. Code Ann. § 8-44-104(a).  Here,

there is no genuine dispute that the Book Review Committee did not always do so.

The records furnished by the Defendants as part of an admittedly compliant public

records response[27] reflect at least two Book Review Committee meetings for which there

are no minutes.[28]  One such meeting on an unknown date—during which two books were

debated and voted on—appears only by reference in the minutes of another meeting.[29]

---

[26] Doc. 11-1 at PageID #96.  *See also* Doc. 9 at ¶¶ 18–20.

[27] *See* Doc. 9 at ¶ 20 ("It is admitted that the Wilson County Board of Education duly responded to the Plaintiff's public records request in compliance with all applicable laws.").

[28] *See* Doc. 11-2 at PageID ## 101–126.

[29] *Compare* Doc. 11-2 at PageID #101 ("Update from the April Board Meeting[:] the board upheld the committee's recommendation for the [sic] both books presented (Eleanor and Park and The Bluest Eye)."); *with id.* at PageID ## 101–126 (containing no minutes for any Book Review Committee meeting where either "Eleanor and Park" or "The Bluest Eye" were considered).

Minutes for a different meeting scheduled for "September 27th @ 4:30"—which is referenced in the minutes of the Committee's July 26, 2022 meeting[30]—are absent, too.[31]

To be sure, the Defendants have denied that they failed to "promptly and fully record [] meeting minutes" or make them "publicly available"[32] as to either of these meetings. But they also admit that their public records response "speaks for itself[,]"[33] and the records furnished by the Defendants in response to the Plaintiff's request reflect at least two scheduled meetings for which meeting minutes were not recorded. Thus, at least at this juncture, there does not appear to be any *genuine* dispute about the matter, notwithstanding the Defendants' denials. *Cf. McLemore v. Gumucio*, No. 3:19-CV-00530, 2021 WL 2400411, at *1 (M.D. Tenn. June 11, 2021) (a litigant may seek summary judgment based on "purported facts that the non-movant very much disputes but that, in the view of the movant, nevertheless are not *genuinely* in dispute; that is, the statement can include facts that the non-movant disputes but is unable to dispute effectively because it is unable to point to evidence showing that there is a genuine dispute for trial as to the purported fact.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). As a result, summary judgment should issue as to Count II of the Plaintiff's Complaint (the Plaintiff's failure to record meeting minutes claim) as well.

C. **THIS COURT SHOULD ISSUE PERMANENT INJUNCTIVE RELIEF, IMPOSE A REPORTING REQUIREMENT, AND IMPOSE A PENALTY.**

Where, as here, a governing body has failed to comply with the Tennessee Open Meetings Act, any action taken by the body must be declared "void and of no effect[.]" *See*

---

[30] *See* Doc. 11-2 at PageID #109.
[31] *See* Doc. 11-2 at PageID ## 101–126.
[32] Doc. 9 at ¶¶ 42–45; Doc. 11 at ¶¶ 42–45.
[33] *See* Doc. 9 at ¶ 20.

Tenn. Code Ann. § 8-44-105. A reviewing court may also "impose penalties, and otherwise enforce the purposes of this part upon application of any citizen of this state." *See* Tenn. Code Ann. § 8-44-106(a). Two of the Act's enforcement mechanisms— permanent injunctive relief for each violation and a reporting requirement—are also mandatory. *See* Tenn. Code Ann. § 8-44-106(c) ("The court shall permanently enjoin any person adjudged by it in violation of this part from further violation of this part. Each separate occurrence of such meetings not held in accordance with this part constitutes a separate violation."); § 8-44-106(d) ("The final judgment or decree in each suit shall state that the court retains jurisdiction over the parties and subject matter for a period of one (1) year from date of entry, and the court shall order the defendants to report in writing semiannually to the court of their compliance with this part.").

Here, because there is no genuine dispute that the Book Review Committee violated the Open Meetings Act by conducting all of its meetings without giving adequate public notice and by holding at least two meetings for which minutes were not recorded, this Court should:

1.      Declare all actions taken by the Book Review Committee to be "void and of no effect;" *see* Tenn. Code Ann. § 8-44-105;

2.      Enter a permanent injunction as to each violation, *see* Tenn. Code Ann. § 8-44-106(c);

3.      Impose a reporting obligation upon the Book Review Committee ordering it "to report in writing semiannually to the court of their compliance with this part[,]" *see* Tenn. Code Ann. § 8-44-106(d); and

4.      "[I]mpose penalties" as necessary to enforce the Act, *see* Tenn. Code Ann. § 8-44-106(a).

# V. CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Partial Summary Judgment should be **GRANTED**.

Respectfully submitted,

By:    /s/ Daniel A. Horwitz
        DANIEL A. HORWITZ, BPR #032176
        LINDSAY SMITH, BPR #035937
        MELISSA DIX, BPR #038535
        HORWITZ LAW, PLLC
        4016 WESTLAWN DR.
        NASHVILLE, TN 37209
        daniel@horwitz.law
        lindsay@horwitz.law
        melissa@horwitz.law
        (615) 739-2888

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 13th day of March, 2023, a copy of the foregoing was mailed via USPS mail, postage prepaid and/or transmitted via the Court's e-filing system, to:

Christopher C. Hayden (#028220)
Attorney for Defendants
P.O. Box 10547
Jackson, Tennessee 38308
(731) 300-0737
chris@schofcounsel.com

Michael Ray Jennings
326 N Cumberland Street
Lebanon, TN 37087
(615) 444-0585
Email: mjenningslaw@aol.com

*Counsel for Defendants*

By:     /s/ Daniel A. Horwitz
        Daniel A. Horwitz, BPR #032176