IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHRISTOPHER SOREY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | NO. 3:23-cv-00181 |
| v. ) | |
| ) | JUDGE RICHARDSON |
| WILSON COUNTY BOOK REVIEW ) | |
| COMMITTEE, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Pending before the Court is Plaintiffs' Second Motion for Preliminary Injunction (Doc. No. 38, "Motion"), accompanied by supporting memorandum (Doc. No. 38). Defendants filed a response in opposition (Doc. No. 43), to which Plaintiffs filed a reply (Doc. No. 45). For the reasons discussed herein, the Court will deny the Motion.

### BACKGROUND FACTS[1]

Plaintiff Christopher Sorey ("Plaintiff") is a Wilson County resident and his daughter (and sole co-Plaintiff) Lauren Sorey attends Wilson Central High School which is in the Wilson County School System. Defendant Wilson County Board of Education ("Board") is the school board for Wilson County, Tennessee. Defendant Wilson County Book Review Committee ("Committee")

---

[1] The following facts, unless somehow qualified herein, are taken as true for purposes of the Motion because they are either: (1) asserted and evidentially supported at least to some degree by one party and not rebutted by the other side; (2) otherwise not in genuine dispute; (3) asserted and evidentially supported by one side to such an extent, or in such a manner, that they are credited by this Court even if rebutted to some extent by the other side; or (4) subject to judicial notice. Because there are no facts in dispute that are material to the preliminary injunction sought, the Court may and will decide this Motion without an evidentiary hearing. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp*., 511 F.3d 535, 553 (6th Cir. 2007) ("[W]here material facts are not in dispute or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing.").

was created by the Board pursuant to Board Policy 4.403 ("Policy") in response to the Age-Appropriate Materials Act of 2022, which requires Tennessee school districts to publish a list of materials in their public-school libraries and to periodically review them to make sure they are "appropriate for the age and maturity levels of students who may access the materials." Tenn. Code Ann. § 49-6-3803(b)(1). The Policy states

> "Any student, parent/guardian, staff member, or Wilson County resident may request review and reconsideration of specific items in school collections of materials. An attempt must be made at the building level to informally resolve the concern with the school principal. If not resolved, the complainant can appeal to the Director of Schools in writing requesting review and reconsideration of the instructional material. **The Director of Schools will appoint an administrative committee made up of a school librarian, a parent, a school administrator, and the Deputy Director of Academics. The appointed committee shall meet and review the material and will make a recommendation to the Board at the following Board meeting regarding the material** and will issue a response in writing to the complainant and the school principal within ten (10) school days of the recommendation. The School Board shall make the final decision on the reconsideration of instructional materials."

(Emphasis added).[2] (Doc. No. 20 at 7).

The Committee began meeting in 2022 to review books as to which a request for review had been made. These meetings are scheduled only after the Committee receives appeals from complainants whose concerns regarding specific items in the school district's libraries were not resolved at the building level. At its meetings, the Committee considers complainants' concerns about particular books and forms a recommendation for the Board. Public notice was not made in advance of the Committee's meetings, and Defendants insist that no such notice is required. Although records of Committee members' attendance are not kept for Committee meetings, Defendants admit that meetings always consist of at least five members, including the deputy

---

[2] The Policy use the term "complainant" for someone ("students, parents/guardians, staff members, and/or Wilson County residents") requesting a review, and the Court does likewise herein.

director, a supervisor/administrator, educator, and librarian. Every meeting of the Board is properly noticed, open to the public and physically accessible to all students, employees, and interested citizens. Moreover, the Board's regularly scheduled meetings are approved one year in advance, and advance notice of such meetings is posted in the Board office, provided to the local news media for announcement, and posted on the official District website.

PROCEDURAL BACKGROUND

Plaintiff[3] filed his original complaint (Doc. No. 1) on February 14, 2023 in the Wilson County Chancery Court, alleging that Defendants violated Tennessee's Open Meetings Act and 42 U.S.C. § 1983.[4] (Doc. No. 1-1). Along with his original complaint, Plaintiff filed an application for "temporary injunction" with supporting memorandum of law (Doc. No. 1-2 at 4-17),[5] which this court denied without prejudice in an order dated June 26, 2023 (Doc. No. 30, "June 26 Order") on the basis that Plaintiff was not facing imminent and irreparable injury because there was at that time no indication that the Book Review Committee would imminently hold a meeting. On August 15, 2023, Plaintiff filed an Amended Complaint (Doc. No. 36) adding Lauren Sorey as a Plaintiff in the action and adding the following factual allegations that had been revealed through discovery: (1) between the time the parties finished briefing the "Application for Temporary Injunction" and

---

[3] Lauren Sorey was not named as a Plaintiff in the original complaint, which named only Christopher Sorey as a Plaintiff. (Doc. No. 1-1). Accordingly, the Court uses "Plaintiff" in the singular when discussing the procedural history of the case prior to Lauren Sorey being added to the action, as a second Plaintiff, in the Amended Complaint (Doc. No. 36) filed on August 15, 2023.

[4] The Court is far from convinced that the Committee is a suable defendant on a § 1983 claim, even if one or more other defendants is, but it need not take any position on that issue at this time.

[5] The Court construed this document, which was styled as an "Application for Temporary Injunction," as requesting a preliminary injunction. (Doc. No. 7 at 3).

the June 26 Order ruling on that injunction, the Committee conducted at least three meetings;[6] (2) "[a]t least 5 members are always present at each [Committee] meeting"; and (3) minutes taken by the Committee during its meetings do not include attendance records. (Doc. No. 36 at 8, 11). Plaintiffs now assert that because Committee meetings continued despite Defendants' prior representations that none were scheduled or anticipated, and because minutes from a May 2023 Committee meeting include a list of "upcoming" books to consider at future meetings[7] (Doc. No. 36-2 at 5), it is likely that the Committee will hold another meeting before this case is resolved, which (in Plaintiffs' view) makes the threat of irreparable injury imminent.

On this basis, Plaintiffs have filed the Motion seeking an injunction (1) "[o]rdering the Book Review Committee to publish adequate public notice of its meetings in advance of them," (2) "[f]orbidding the Book Review Committee from meeting without publishing adequate public notice," and (3) "[o]rdering the Book Review Committee to keep adequate meeting minutes that include a record of all persons present." (Doc. No. 38 at 1).[8]

---

[6] Plaintiff suggests that Defendants' holding of these meetings, in light of prior statements to the Court that Defendant "does not have any meetings scheduled nor are any anticipated to be scheduled in the near future" (Doc. No. 18 at 10) is an attempt by Defendants to intentionally mislead the Court. However, Defendants explain that, because the scheduling of meetings is based upon receipt of appeals from third parties, "the frequency of [Defendants'] meetings is often sporadic and unpredictable." (Doc. 43 at 3). The Court credits Defendants' explanation and, absence evidence to the contrary, does not conclude that Defendants sought to mislead the Court. With that said, the Court must now consider the "sporadic and unpredictable" nature of scheduling meetings in its analysis of the irreparable harm factor on the Motion.

[7] The Court notes that although a few of the books included in this appear to have been considered as of BRC's August 7, 2023 meeting (Doc. 43 at 3-5), most of the books have yet to be considered, to the Court's knowledge.

[8] When citing to a page in a document filed by one of the parties, the Court endeavors to cite to the page number ("Page ___ of __") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document.

## PRELIMINARY INJUNCTION STANDARD

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2003). "The party seeking a preliminary injunction bears a burden of justifying such relief, including showing irreparable harm and likelihood of success." *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014) (quoting *Michigan Cath. Conf. & Cath. Fam. Servs. v. Burwell*, 755 F.3d 372, 382 (6th Cir. 2014)).

Those seeking a preliminary injunction must meet four requirements.[9] They must show a likelihood of success on the merits; irreparable harm in the absence of the injunction; that the balance of equities favors them; and that public interest favors an injunction. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Sisters for Life, Inc. v. Louisville-Jefferson County*, 56 F.4th 400, 403 (6th Cir. 2022).

A plaintiff seeking a preliminary injunction may not merely rely on unsupported allegations, but rather must come forward with more than "scant evidence" to substantiate their allegations. *See, e.g.*, *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 417 (6th Cir. 2014); *Cameron v. Bouchard*, 815 F. App'x 978, 986 (6th Cir. 2020) (vacating preliminary injunction when plaintiffs made no evidentiary showing on some elements of their claim, but instead made mere allegations regarding the treatment of Covid-19 in prisons); *McNeilly v. Land*, 684 F.3d 611, 614 (6th Cir. 2012) (upholding denial of preliminary injunction when plaintiff made only a "small

---

[9] Some published Sixth Circuit cases stand unmistakably for the proposition that these four items are *factors* rather than *requirements,* except that irreparable harm is a requirement (and, if it exists and thus keeps the possibility of a preliminary injunction alive, thereafter becomes a factor to be balanced along with the other three factors). *See, e.g.*, *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019). Alas, this case law is inconsistent with more recent Sixth Circuit case law and with Supreme Court case law (including the two cases cited above) describing these as all being requirements. The Court believes that it is constrained the follow the latter line of cases.

showing" of evidence); *United States v. Certain Land Situated in City of Detroit*, No. 95-1118, 1996 WL 26915, *1 n.1 (6th Cir. Jan. 23, 1996) (noting a lack of evidence to support speculative allegations).[10]

In conducting the preliminary injunction analysis, the Court may rely on the entire record, including affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding. *Sterling v. Deutsche Bank Nat'l Tr. Co.,* 368 F. Supp. 3d 723, 725 (S.D.N.Y. 2019); *Express Franchise Servs., L.P. v. Impact Outsourcing Sols., Inc.*, 244 F. Supp. 3d 1368, 1379 (N.D. Ga. 2017); *Action NC v. Strach*, 216 F. Supp. 3d 597, 629 (M.D.N.C. 2016) (explaining that district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted). *See also Ohio State Conf. of N.A.A.C.P. v. Husted*, 768 F.3d 524, 535 (6th Cir. 2014), *vacated on other grounds*, No. 14-3877, 2014 WL 10384647 (6th Cir. Oct. 1, 2014).

## DISCUSSION

1. <u>Likelihood of Success on the Merits</u>

The Tennessee Open Meetings Act (TOMA) declares that it is "the policy of this state that the formation of public policy and decisions is public business and shall not be conducted in secret." § 8-44-101(a). In furtherance of this purpose, the Code requires that "meetings" of any "governing body" be open to the public at all times, that "adequate public notice" be given of such meetings, and that minutes of such meetings be "promptly and fully recorded," and "open to public inspection." Tenn. Code Ann. § 8-44-102(a); Tenn. Code Ann. § 8-44-103(a)-(b); Tenn. Code

---

[10] The Court keeps this principle in mind as to disputed factual assertions made by Plaintiff. The Court is aware, however, that many of the facts underlying the instant Motion are not in dispute.

Ann. § 8-44-104(a). "Any action taken at a meeting in violation of [the Code] shall be void and of no effect . . . ." Tenn. Code Ann. § 8-44-105.

TOMA defines "governing body" as "[t]he members of any public body which consists of two (2) or more members, with the authority to make decisions for or recommendations to a public body on policy or administration . . . ." Tenn. Code Ann. § 8-44-102(b)(1)(A). In addition, TOMA defines "meeting" as "the convening of a governing body of a public body for which a quorum is required in order to make a decision or to deliberate toward a decision on any matter." Tenn. Code Ann. § 8-44-102(b)(2).[11]

Plaintiffs are not likely to succeed on the merits of their TOMA claim. Although the Committee is a "governing body,"[12] it is unlikely that the Committee's gatherings[13] would properly be deemed "meetings" for purposes of the statute because there is insufficient evidence that the Committee required a quorum to act. The statute does not define "quorum," but, as Plaintiffs point out, one influential secondary source defines the term as "'[t]he minimum number of members . . . who must be present for a deliberative assembly to legally transact business,'" Tenn. Op. Att'y Gen. No. 05-175 (Dec. 13, 2005) (quoting Black's Law Dictionary, 1284 (8th ed. 2004)); *see also QUORUM*, Black's Law Dictionary (11th ed. 2019); *Polk Cnty. v. State Bd. of Equalization*, 484 S.W.2d 49, 56 (Tenn. Ct. App. 1972). But even by Plaintiffs' proposed definition, the Policy clearly does not by its terms require a quorum. Indeed, the Policy provides that the Committee

---

[11] The statute does not define "quorum" or "deliberate" for purposes of this provision.

[12] The Committee consists of more than two members and, although it does not have authority to issue a binding decision on the appropriateness of library materials, the Committee does have "authority . . . to make recommendations to a public body on policy." Tenn. Code Ann. § 8-44-102(b)(1)(A). The Committee is therefore a "governing body" under TOMA.

[13] For the sake of clarity, the Court uses the word "gathering" rather than "meeting" to refer to an assembly of Committee members that does not (or does not necessarily) constitute a "meeting" under TOMA.

must be "made up of a school librarian, a parent, a school administrator, and the Deputy Director of Academics." But, contrary to Plaintiffs' assertions, the Policy says nothing to suggest that all (or, for that matter, even a majority) of those members "must be present" at a particular gathering for a recommendation to the Board to be valid. Because the "record is deficient with respect to proof that [the] Committee requires a quorum for action," the Court cannot conclude that the Committee held a "meeting" as defined by, and in violation of, TOMA. *Allen v. City of Memphis*, No. W2003-00396-COA-R3CV, 2004 WL 1402553, at *5 (Tenn. Ct. App. June 22, 2004).

Plaintiffs ask this Court to infer from the absence of a quorum requirement that the Policy implicitly requires each member appointed to the Committee to be present. But the Court simply cannot find that the Policy makes that implication. Plaintiffs provide no support for the proposition that if there is no express requirement for a quorum, then the Court should conclude that there is an implicit requirement that everyone attend. If the Board wished to require such a quorum (or any quorum at all), it could have said as much in the Policy. Instead, the Court finds that the lack of a specific quorum requirement suggests that no quorum is required for the Committee to make a valid recommendation to the Board.

Plaintiffs also point to Defendants' admission (made in answers to interrogatories served upon them by Plaintiffs) that the Committee "always" has at least five members present at each gathering, including a "deputy director, a supervisor/administrator, educator, and librarian" as evidence that Defendants viewed the Policy as requiring a quorum and complied with it as such. (Doc. No. 39 at 10; Doc. No. 45 at 4 (each citing Doc. No. 36-1 )). But this argument misses the mark. First, Defendants did not admit that a *parent*, one of the individuals included in the "quorum" that Plaintiffs contend is required by the Policy, was present at the gatherings. (Doc. No. 36-1 at 6, 14). Thus, in asserting that "Defendants admitted that they complied with this requirement,"

(Doc. No. 45 at 4), Plaintiffs are wrong for multiple reasons: Defendants dispute that there was any requirement to begin with, and they dispute that actual attendance was such as to comply with this (purported) requirement even if it did in fact exist. Second, and more to the point, even if all of these parties did attend every gathering, the fact that all parties named in the Policy attended the Committee's gatherings does not mean that the Policy *required* a quorum in order to make a recommendation. The Court finds that it is not reasonable to infer, from the (alleged) fact that everyone did come, that everyone was *required* to come. In fact, even if Defendants did express a *belief* in this litigation that all parties named in the Policy must attend the gathering for the Committee to act (which Defendants have not), such expression would not be dispositive and would not change the fact that the Policy, by its plain terms, does not require a quorum for the Committee to act.

Because there is insufficient evidence to prove that the Committee required a quorum to act, TOMA likely does not apply to the Committee gatherings. Plaintiffs assert in the alternative that, even if a quorum is not required for the Committee to act, the Committee would still violate TOMA by acting as an improper "informal assemblage." (Doc. No. 39 at 11-12; Doc. No. 45 at 4); *see* Tenn. Code Ann. § 8-44-102(c) ("No such chance meetings, informal assemblages, or electronic communication shall be used to decide or deliberate public business in circumvention of the spirit or requirements of this part."). However, based on the undisputed facts, the Court cannot conclude that the Committee gatherings fit any reasonable definition of "informal assemblage."

Moreover, the Court is unpersuaded that Defendants designed the Committee's recommendation process in an attempt to "circumvent[] . . . the spirit or requirements of [TOMA]." The Board's transparent consideration of the Committee's recommendation, in a forum open to

the public, is consistent with the spirit and requirements of TOMA. And beyond the fact that the Board frequently accepts the Committee's recommendations, Plaintiffs offer no evidence and makes no allegations that the Board is simply "rubber-stamping" the Committee's recommendations without undertaking its own meaningful review and deliberation of the materials. Thus, even if the Committee is being used as an informal body to deliberate public business, it is not being used to deliberate public business "*in circumvention of the spirit or requirements*" of TOMA, because the Board is engaged in subsequent deliberation and makes the ultimate decision.

Plaintiffs have therefore failed to show a likelihood of success on the merits, and so a preliminary injunction is unwarranted.

2. <u>Irreparable Harm</u>[14]

To be successful in a request for a preliminary injunction, a plaintiff must demonstrate irreparable harm. "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 56, 578 (6th Cir. 2002). To constitute irreparable harm to justify a preliminary injunction, the harm must be "actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.,* 443 F.3d 540, 552 (6th Cir. 2006).

Plaintiffs assert that they face irreparable harm absent a preliminary injunction because they will be deprived of their rights "to be present," "to participate in the democratic process intelligently," and to "receive information about the manner in which governmental decisions are made." (Doc. No. 39 at 13-14). Plaintiff Lauren Sorey further alleges that she will be irreparably

---

[14] Because the Court has determined that a preliminary injunction is unwarranted based on Plaintiff's failure to show a likelihood of success on the merits, the Court is not required to analyze any of the remaining requirements necessary for a preliminary injunction. Nevertheless, the Court here considers the irreparable harm requirement as an independent and alternative ground for denying the preliminary injunction.

harmed by the Committee "producing policy"[15] that affect her access to books. *Id*. at 13. But none of these purported injuries are imminent or actual. For starters, it is not a certainty that a Committee meeting will even occur between now and the final resolution of this case. As Defendants have pointed out, the "frequency of the [] Committee's meetings is often sporadic and unpredictable" due to the fact that the scheduling of meetings is based upon receipt of appeals from third parties. (Doc. No. 43 at 3). Thus, while Plaintiffs speculate that additional meetings may take place between now and the final resolution of this case, Plaintiffs cannot say with certainty that this will occur. And given that the Court is unaware of any currently scheduled Committee meetings (let alone any "imminent" ones), the potential harm to Plaintiffs resulting from them cannot be characterized as "imminent."

Moreover, even if the Committee does hold another meeting before the final resolution of this case, Plaintiffs' exclusion from any such meeting would not irreparably harm Plaintiffs. Plaintiffs could still exercise their rights to "be present," "participate in the democratic process intelligently," and "receive information about the manner in which governmental decisions are made" by attending the Board's regularly scheduled meetings (in particular, those in which the Committee recommendations are addressed) in which Plaintiffs would have the opportunity to publicly voice their opinions regarding Committee recommendations (and the books that are the subject of those recommendations). In fact, voicing their opinions at the Board meetings would likely be a more effective means of engaging in the democratic process, given that it is only the Board, rather than the Committee, that holds the power to make final decisions on library materials.

Finally, the Committee is incapable of "producing policies" (as Plaintiffs put it), or taking action or making decisions (as the Court would put it), that would affect Plaintiff Lauren Sorey's

---

[15] The Court is skeptical of the characterization of the Committee as "producing policy," which arguably does not encompass the act of making book-specific recommendations.

access to books in the library. As previously discussed, the Committee lacks the authority to make final decisions as to which materials should remain available in the library. Instead, that authority belongs to the Board, and Plaintiff Lauren Sorey may voice her opinion regarding such policies at the regularly scheduled Board meetings.

Accordingly, the Court finds that Plaintiffs have failed to demonstrate that they will suffer irreparable harm in the absence of a preliminary injunction. Plaintiffs' failure to make this showing therefore provides an independent and alternative ground for denying the preliminary injunction.

## CONCLUSION

In light of the Court's findings provided herein, the Motion (Doc. No. 38) is hereby DENIED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE